# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TRANSPORTATION ALLIANCE**
**BANK INC.,**

    **Plaintiff,**

v.              Case No:  6:16-cv-1773-Orl-40DCI

**TRAX AIR, LLC, BRYAN L. BREWER,**
**BRYAN L. BREWER, KATHERINE A.**
**BREWER, THE BRYAN L. BREWER**
**REVOCABLE TRUST and TRAX**
**AIRCRAFT, LLC,**

    **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. 55)** |
| **FILED:** | **February 1, 2018** |
| | **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**. |

**I. Background**

This case stems from the following business loans that plaintiff Transportation Alliance Bank, Inc. (TAB) extended to defendant Trax Air, LLC (Trax):

| Loan | Date | Principal Amount |
|---|---|---|
| Loan 1 | February 13, 2015 | $134,319.50 |
| Loan 2 | February 13, 2015 | $601,319.50 |
| Loan 3 | April 9, 2015 | $68,427.50 |

Docs. 1 at ¶¶ 8-9, 11; 1-1; 1-3; 1-7 (collectively, the Loans).  Trax executed promissory notes in conjunction with each of the Loans.  Docs. 1 at ¶¶ 8-9, 11; 1-2; 1-4; 1-8 (collectively, the Notes).  The Loans and Notes (collectively, the Loan Agreements) state, in relevant part, that failure to make a scheduled payment constitutes default.  Docs. 1 at ¶¶ 15-16; 1-1 at 4; 1-2 at 1; 1-3 at 4; 1-4 at 1; 1-7 at 4; 1-8 at 2.  The Notes also provide that in the event of default the interest rate would increase to 18% per annum and, at TAB's discretion, TAB may add any unpaid accrued interest to the principal and require immediate payment of the unpaid principal and interest.  Docs. 1 at ¶ 20, 22; 1-2 at 1-2; 1-4 at 1-2; 1-8 at 1-2.

The Loan Agreements are backed by absolute and unconditional guarantees executed by defendants Brian L. Brewer, in his individual capacity, and The Bryan Brewer Revocable Trust (the Brewer Trust)[1] (collectively, the Guarantors).  Docs. 1 at ¶ 13; 1-12; 1-13; 1-14; 1-15; 1-16; 1-17.  The Loan Agreements are also secured by a commercial security agreement[2] executed by Trax and three aircraft security agreements executed by Trax and defendant Trax Aircraft, LLC (Trax Aircraft).  Docs. 1 at ¶¶ 10, 12; 1-5 (the Commercial Security Agreement); 1-9 (the Piper Security Agreement); 1-10 (the Beechcraft Security Agreement); 1-11 (the Cessna Security Agreement).

TAB alleges that Trax breached the Loan Agreements in late 2015 by failing to make monthly payments on the Loan Agreements.  Doc. 1 at ¶ 32.  Thus, in November 2015, TAB sent Trax and the Guarantors a letter notifying them that Trax defaulted on the Loan Agreements.  Doc. 1 at ¶ 33; 1-18.  In that same letter, TAB demanded that Trax and the Guarantors cure the defaults

---

[1] The Brewer Trust is the sole member of Trax.  Docs. 1 at ¶ 5(a); 55-21 at ¶¶ 10-11.

[2] The commercial security agreement only secures Loan 2.  Doc. 1-5 at 1.

within 10 days of the date of the letter, and informed them that TAB would increase the interest rate to 18% per annum until the defaults were cured. *Id*.

TAB alleges that Trax and the Guarantors failed to cure the defaults. Doc. 1 at ¶ 34. Thus, on December 1, 2015, TAB sent Trax and the Guarantors a letter notifying them that TAB was exercising its right to accelerate the Loan Agreements and, as a result, demanded immediate payment of all amounts due and owing under the Loan Agreements. Docs. 1 at ¶ 34; 1-19.

In February 2016, the parties attempted to rectify the defaults by entering into two separate agreements. First, TAB and the Brewer Trust entered into a pledge agreement, in which the Brewer Trust pledged 100% of its equity interest in Trax as security for the prompt payment and performance of Trax's secured obligations to TAB. Docs. 1 at ¶ 37-38; 1-21 (the Pledge Agreement). Second, TAB, Trax, and the Guarantors entered into an agreement, in which Trax agreed to perform certain obligations, such as making scheduled payments, in exchange for TAB forbearing from exercising its rights and remedies under the Loan Agreements. Docs. 1 at ¶ 35; 1-20 (the Forbearance Agreement). The Forbearance Agreement provided that TAB could terminate the same and exercise any and all of its rights and remedies under the Loan Agreements in the event Trax failed to comply with any of its obligations under the Forbearance Agreement. Docs. 1 at ¶ 36; 1-20 at 3.

TAB alleges that Trax breached the Forbearance Agreement by, among other things, failing to make scheduled payments. Doc. 1 at ¶ 40. Thus, TAB alleges that the Brewer Trust defaulted on the Pledge Agreement, and that TAB elected to terminate the Forbearance Agreement. *Id*. at ¶ 41.

In October 2016, TAB filed a Complaint against Trax, Mr. Brewer, in his individual capacity, and Mr. Brewer and Katherine A. Brewer (collectively, the Brewers) in their capacities

as trustees of the Brewer Trust (collectively, Defendants) in relation to defaulted Loan Agreements. Doc. 1.³ TAB asserted the following claims against Defendants: Count I – breach of contract for the amounts due under the Loan Agreements and related guarantees; Count II – foreclosure of the security interests; and, Count III – fees and expenses for enforcement of the Piper and Beechcraft Security Agreements. *Id*. at 17-19. TAB requested various forms of relief, including, but not limited to, an award of damages resulting from the breach of the Loan Agreements. *Id*. at 19-21.

Trax was served on October 20, 2016. Doc. 21. The Brewers and the Brewer Trust were served on January 24, 2017. Docs. 31; 32; 33. Defendants did not timely respond to the Complaint. Thus, TAB moved for default against Defendants, and the Clerk entered default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). Docs. 25; 37; 38; 39; 40.

TAB now moves for default judgment against Trax, Mr. Brewer, in his individual capacity, and the Brewers, in their capacities as trustees of the Brewer Trust. Doc. 55 (the Motion). TAB argues that the allegations in the Complaint and the evidence presented in support of the Motion demonstrate that it is entitled to default judgment against Defendants. Docs. 55 at 2; 55-1 at 4-11.⁴ TAB requests the following relief: 1) an award of $553,883.34 in unpaid principal, $297,877.61 in unpaid, accrued interest, and an interest rate of 18% per annum on the amounts

---

³ TAB also named Trax Aircraft as a defendant, but TAB voluntarily dismissed Trax Aircraft in January 2018. Docs. 53; 56.

⁴ TAB attached an affidavit from its vice president, David Law, in support of the Motion. Doc. 55-2. Mr. Law attached the financial documents at issue to his affidavit. Docs. 55-3; 55-4; 55-5; 55-6; 55-7; 55-8; 55-9; 55-10; 55-11; 55-12; 55-13; 55-14; 55-15; 55-16; 55-17; 55-18; 55-19; 55-20. The same documents were attached to the Complaint. TAB also attached a supplemental affidavit from Mr. Law, to which Mr. Law attached various documents including the balance sheets for each of the Loan Agreements. Docs. 55-21; 55-22; 55-23; 55-24; 55-25; 55-26; 55-27; 55-28; 55-29.

due and owing; 2) an award of attorney fees, costs, and expenses incurred in connection with bringing this case; 3) an award of attorney fees, costs, and expenses incurred in connection with the enforcement and execution of the judgment rendered by the Court; 4) recognition that TAB is the holder and owner of the Loan Agreements and related financial instruments (e.g., guarantees and security agreements); and 5) reserving all rights, claims, and causes of action TAB may bring to enforce TAB's interest in the collateral described in the Commercial Security Agreement and the Pledge Agreement. Doc. 55-1 at 18-19.

## II.    Standard of Review

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default. Fed. R. Civ. P. 55(a). Second, after obtaining clerk's default, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[5]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

---

[5] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in their motion for default judgment. If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Id*. (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of damages). Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages. *See Adolph Coors*, 777 F.2d at 1543-44. However, no hearing is needed "when the district court already has a wealth of evidence from the

party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

## III. Analysis

### A. Jurisdiction

TAB alleges that the Court has diversity jurisdiction over this case. Doc. 1 at ¶ 5. A federal court has diversity jurisdiction over civil actions where there is complete diversity of citizenship among the opposing parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a).

TAB is a Utah corporation with its principle place of business in Utah. Doc. 1 at ¶ 5. The Brewers are citizens of Florida. Docs. 1 at ¶¶ 2-3; 55-21 at ¶ 8. The Brewers are also the sole trustees of the Brewer Trust, Docs. 1 at ¶ 3; 55-21 at ¶ 9; 55-22 at 1, and, as a result, the Brewer Trust is a citizen of Florida. *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 257 (7th Cir. 1998) (explaining that the citizenship of a trust is determined by the citizenship of its trustees) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980)). The Brewer Trust is the sole member of Trax. Docs. 1 at ¶ 5(a); 55-21 at ¶¶ 10-11. Thus, Trax is a citizen of Florida. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen."). Therefore, in light of the foregoing, there is complete diversity between TAB and Defendants. *Travaglio v. Am. Expresss Co.*, 735 F.3d 1266, 1268 (11th Cir. 2013) (there is complete diversity where "no plaintiff is a citizen of the same state as any defendant").

Second, TAB seeks more than $800,000.00 in damages. Docs. 1 at 19; 55-1 at 18. Thus, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

Therefore, in light of the foregoing, the undersigned finds that the Court has subject matter jurisdiction over this case. The undersigned also finds that the Court has personal jurisdiction over Defendants, whom, as discussed above, are citizens of Florida.

### B. Clerk's Default

#### 1. Trax

TAB filed a return of service, in which the process server averred that at 10:00 a.m., on October 20, 2016, she attempted to serve Trax's registered agent, but he was unavailable. Doc. 21 at 1. That same day, in light of Mr. Brewer's absence, the process server served Trax's manager, Kenneth Crane, pursuant to Fla. Stat. § 48.062(2). *Id*. This was proper service on a limited liability company under Florida law. Fla. Stats. §§ 48.062(2); 48.091(2); *see Chambers v. Halsted Fin. Servs., LLC*, Case No. 2:13-cv-809-FtM-38CM, 2014 WL 3721209, at *1 n.2 (M.D. Fla. July, 28 2014) (reading Florida Statutes §§ 48.062(2) and 48.091(2) together). Thus, Trax had 21 days from the date of service to respond to the Complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). Trax, however, did not timely respond to the Complaint and, as a result, is in default. Therefore, the undersigned finds that the Clerk properly entered default against Trax.

#### 2. Mr. Brewer

TAB filed a return of service, in which the process server averred that, on January 24, 2017, she personally served Mr. Brewer, in his individual capacity. Doc. 33. This was proper individual service under Florida law. Fla. Stat. § 48.031(a). Thus, Mr. Brewer had 21 days from the date of service to respond to the Complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). Mr. Brewer, however, did not

timely respond to the Complaint and, as a result, is in default. Therefore, the undersigned finds that the Clerk properly entered default against Mr. Brewer.

### 3. The Brewer Trust

TAB filed a return of service, in which the process server averred that, on January 24, 2017, she personally served Mr. Brewer, in his capacity as trustee of the Brewer Trust. Doc. 32. TAB also filed a return of service, in which the process server averred that, on January 24, 2017, she served Mrs. Brewer, in her capacity as trustee of the Brewer Trust, by personally serving Mr. Brewer, who is Mrs. Brewer's spouse and co-resident. Doc. 31. The service on Mr. Brewer was proper pursuant to Fla. Stat. § 48.031(a), while service on Mrs. Brewer was proper pursuant to Fla. Stat. § 48.031(2)(a). Thus, TAB properly served the sole trustees of the Brewer Trust, which constitutes sufficient service on the Brewer Trust. *See Inglis v. Casselberry*, 137 So.3d 389, 392 (Fla. 2d DCA 2013) ("In order to exercise personal jurisdiction over the trustee or the trust, either service of process must be made on the trustee or the trustee must voluntarily submit to the court's jurisdiction."). Therefore, the Brewers had 21 days from the date of service to respond to the Complaint. Fed. R. Civ. P. 12(a)(1)(A)(i). The Brewers, however, did not timely respond to the Complaint and, as a result, they and the Brewer Trust are in default. Therefore, the undersigned finds that the Clerk properly entered default against the Brewers, in their capacities as trustees, and the Brewer Trust.

### C. Liability

TAB argues that Trax breached the Loan Agreements and that Mr. Brewer and the Brewer Trust breached their respective guarantees. Docs. 55 at ¶ 6; 55-1 at 4-11. Thus, it is clear that TAB seeks default judgment as to Count I (breach of the Loan Agreements and related guarantees) of the Complaint. *See* Doc. 55; 55-1. TAB, however, provides essentially no argument or

authority concerning Counts II (foreclosure) and III (fees and expenses for enforcement of the Piper and Beechcraft Security Agreements). *See id.* Further, it appears that TAB does not seek the type of relief that would be afforded under Counts II and III, since TAB neither seeks foreclosure nor clearly requests fees and expenses for enforcement of the Piper and Beechcraft Security Agreements. *See* Doc. 55-1 at 18-19.[6] Thus, the undersigned construes TAB's motion for default judgment as only seeking default judgment as to Count I. Therefore, the undersigned will determine whether TAB is entitled to default judgment under Count I of the Complaint.

A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state to determine the substantive law to be applied in the case. *Am. Family Life Assurance Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989). The forum state is Florida. Thus, the Court must apply Florida's choice-of-law rules, which provide that a court will enforce "choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (quoting *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So.2d 306, 311 (Fla. 2000)).

The Loan Agreements and related guarantees each contain a choice-of-law provision stating that the instruments will be "governed by federal law applicable to [TAB] and, to the extent not preempted by federal law, the laws of the State of Utah without regard to its conflicts of law provisions." Docs. 1-1 at 5; 1-2 at 2; 1-3 at 5; 1-4 at 2; 1-7 at 5; 1-8 at 2; 1-12 at 3; 1-13 at 3; 1-14 at 3; 1-15 at 3; 1-16 at 3; 1-17 at 3.[7] There is nothing in the record indicating that enforcing

---

[6] It appears that TAB is not seeking relief under Counts II and III because the Piper aircraft, Beechcraft aircraft, and UCC collateral have already been sold, and the proceeds of those sales were applied towards the amounts due under Loans 1 and 2. Docs. 55-1 at 16-17; 55-21 at ¶ 21; 55-27; 55-28; 55-29.

[7] The Pledge and Forbearance Agreements also contain choice-of-law provisions stating that Utah law governs the agreements. Docs. 1-20 at 5; 1-21 at 10. The security agreements each state that

these choice-of-law provisions will contravene any particular public policy. Thus, the undersigned finds that these choice-of-law provisions are enforceable and will apply Utah law in addressing TAB's claims under Count I of the Complaint.

A party asserting a claim for breach of contract under Utah law must establish: 1) the existence of a contract; 2) performance by the party seeking recovery; 3) breach of the contract by the other party; and 4) damages. *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224. A breach or default of the principal agreement constitutes a breach or default of a related guaranty and gives rise to a cause of action against the guarantor. *First Nat'l Bank of Ogden v. Taylor*, 38 Utah 516, 114 P. 529, 530 (1911); *see Valley Bank and Trust Co. v. Rite Way Concrete Forming, Inc.*, 742 P.2d 105, 108 (Utah Ct. App. 1987) (an unconditional guarantee "holds the guarantor liable, without notice, upon the default of the principal").

The well-plead allegations in the Complaint and the evidence submitted in support of the Complaint and Motion establish: 1) the existence of the Loan Agreements (Docs. 1 at ¶¶ 8-9, 11); 2) TAB's performance under the Loan Agreements (*see* Doc. 1 at ¶¶ 8-9, 11, 47-49); 3) Trax's failure to make scheduled payments in breach of the Loan Agreements' terms (Doc. 1 at ¶ 32); and 4) damages in the form of unpaid principal and interest (*see* Doc. 1 at ¶¶ 47-49). These allegations and the supporting evidence establish that Trax breached the Loan Agreements and, consequently, that the Guarantors breached their respective guarantees. *First Nat'l Bank of Ogden*, 114 P. at 530. The parties attempted to resolve the breach through the Pledge and Forbearance Agreements, but the well-plead allegations establish that Trax and the Guarantors also breached those

---

federal and Florida law shall govern all procedural matters related to the perfection and enforcement of TAB's rights against the collateral secured by the agreements, while all other aspects of the agreements shall be governed by Utah law. Docs. 1-5 at 5; 1-9 at 6-7; 1-10 at 7; 1-11 at 6.

agreements. Doc. 1 at ¶¶ 40-41. Thus, the undersigned finds that the well-plead allegations in the Complaint and the evidence submitted in support of the Complaint and Motion establish that Trax breached the Loan Agreements and that Mr. Brewer and the Brewer Trust breached their respective guarantees. Therefore, the undersigned finds that TAB is entitled to default judgment on Count I of the Complaint.

### D. Request for Relief

TAB requests the following relief: 1) an award of $553,883.34 in unpaid principal, $297,877.61 in unpaid, accrued interest, and an interest rate of 18% per annum on the amounts due and owing; 2) an award of attorney fees, costs, and expenses incurred in connection with bringing this case; 3) an award of attorney fees, costs, and expenses incurred in connection with the enforcement and execution of the judgment rendered by the Court; 4) recognition that TAB is the holder and owner of the Loan Agreements and related financial instruments (e.g., guarantees and security agreements); and 5) a reservation of all rights, claims, and causes of action TAB may bring to enforce TAB's interest in the collateral described in the Commercial Security Agreement and the Pledge Agreement. Doc. 55-1 at 18-19.

#### 1. Principal and Interest

Trax's breach of the Loan Agreements caused TAB to exercise its right to accelerate the amounts owing under the Loan Agreements. Docs. 1 at ¶ 34; 1-19. Thus, TAB seeks to recover $553,883.34 in unpaid principal on Loans 1 and 2, and $297,877.61 in unpaid, accrued interest on the same loans. Doc. 55-1 at 17-18.[8] These amounts were due and owing under Loans 1 and 2 as of December 31, 2017. *Id*. TAB has provided an affidavit from its vice president and a detailed

---

[8] The amount due under Loan 3 was satisfied by the proceeds from the sale of the Cessna aircraft that was covered by the Cessna Security Agreement. Doc. 55-1 at 16; 55-21 at ¶ 20; 55-26. Thus, TAB does not seek any monetary relief with respect to Loan 3. *See* Docs. 55; 55-1.

accounting showing the history of Loans 1 and 2, including the interest that accrued on those loans and the payments made on those loans through December 31, 2017.  Docs. 55-2 at ¶ 22; 55-24; 55-25.  This evidence sufficiently establishes that TAB is entitled to recover the amounts sought in the Motion, plus interest thereon from December 31, 2017 forward at a rate of 18% per annum (Docs. 1-2 at 1; 1-4 at 1).

### 2. Attorney Fees, Costs, and Expenses

TAB argues that it is entitled to an award of attorney fees, costs, and expenses in connection with brining this case.  Doc. 55-1 at 13.  The Loan Agreements and related guarantees each state that TAB is entitled to recover its reasonable attorney fees, costs, and expenses in connection with the enforcement of the financial instruments at issue.  Docs. 1-1 at 5; 1-2 at 2; 1-3 at 4; 1-4 at 2; 1-7 at 5; 1-8 at 2; 1-12 at 2-3; 1-13 at 2-3; 1-14 at 2-3; 1-15 at 2-3; 1-16 at 2-3; 1-17 at 2-3.  Thus, the undersigned finds that TAB is entitled to an award of its reasonable attorney fees, costs, and expenses in connection with brining this case.

TAB also seeks an award of attorney fees, costs, and expenses in connection with enforcing and executing the judgment rendered by the Court.  *See* Doc. 55-1 at 18.  TAB, however, does not provide any convincing argument that it is entitled to such relief.  *See id*. at 13.  Further, assuming TAB were entitled to such relief, it is unclear how the Court would determine whether the attorney fees, costs, and expenses incurred in connection with enforcing and executing the judgment were reasonable.  Thus, in light of these issues, the undersigned finds that the Court should deny TAB's request for such attorney fees, costs, and expenses without prejudice.

### 3. Holder and Owner of Loan Documents

TAB requests that the Court recognize it as the holder and owner of the Loan Agreements and related guarantees, security agreements, and other agreements.  Doc. 55-1 at 18-19.  While

TAB does not present any argument in support of this request, it appears that such relief is appropriate since TAB is a party to each of the instruments and there is nothing in the record to suggest that TAB has assigned the instruments to a third party. Thus, the undersigned finds that TAB should be recognized as the holder and owner of the Loan Agreements and related guarantees, security agreements, and other agreements.

### 4. Reservation of Rights

Finally, TAB seeks the following relief:

> Reserving all rights, claims and causes of action of TAB Bank related to the enforcement of TAB Bank's interest in the Collateral, as described in the Commercial Security Agreement and the Pledge Agreement.

Doc. 55-1 at 19. TAB does not discuss why it is entitled to the foregoing relief. *See* Doc. 55-1 at 11-13, 16-17. Further, it is unclear what TAB is seeking through the foregoing request for relief. The Court should not have to speculate as to whether TAB is entitled to the relief sought above or what that relief even entails. Thus, the undersigned finds that the Court should deny Plaintiff's request for the foregoing relief without prejudice.

## IV. Conclusion

Accordingly, it is **RECOMMENDED** that:

1. The Motion (Doc. 55) be **GRANTED** as follows;
   a. The Court find that Transportation Alliance Bank, Inc. is entitled to default judgment on Count I of the Complaint;
   b. The Court enter judgment in favor of Transportation Alliance Bank, Inc. and against Trax Air, LLC, Brian L. Brewer, in his individual capacity, and Brian L. Brewer and Katherine A. Brewer, in their capacities as trustees of The Bryan Brewer Revocable Trust, jointly and severally, on Count I of the Complaint for the

   total amount of $851,760.95, plus interest thereon from December 31, 2017 forward at a rate of 18% per annum;

  c. The Court recognize Transportation Alliance Bank, Inc. as the holder and owner of the following instruments:

    i. The Loans (Docs. 1-1; 1-3; 1-7);

    ii. The Notes (Docs. 1-2; 1-4; 1-8);

    iii. Commercial Security Agreement (Doc. 1-5);

    iv. Piper Security Agreement (Doc. 1-9);

    v. Beechcraft Security Agreement (Doc. 1-10);

    vi. Cessna Security Agreement (Doc. 1-11);

    vii. The Brewer Guarantees (Docs. 1-12; 1-13; 1-14);

    viii. The Brewer Trust Guarantees (Docs. 1-15; 1-16; 1-17);

    ix. Pledge Agreement (Doc. 1-21); and

    x. Forbearance Agreement (Doc. 1-20);

  d. The Court find that Transportation Alliance Bank, Inc. is entitled to its reasonable attorney fees, costs, and expenses incurred in bringing this case, and directing Transportation Alliance Bank, Inc. to file a motion quantifying those fees, costs, and expenses within 14 days of the Court's order on this Report; and

2. The Motion (Doc. 55) be **DENIED without prejudice** in all other respects.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on May 31, 2018.

_____
DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy