UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**TRANSPORTATION ALLIANCE**
**BANK INC.,**

        **Plaintiff,**

v.                                      Case No: 6:16-cv-1773-Orl-40DCI

**TRAX AIR, LLC, BRYAN L. BREWER,**
**BRYAN L. BREWER, KATHERINE A.**
**BREWER and THE BRYAN L.**
**BREWER REVOCABLE TRUST,**

        **Defendants.**

**REPORT AND RECOMMENDATION**

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION TO ESTABLISH AMOUNT OF ATTORNEYS' FEES, COSTS AND EXPENSES DUE (Doc. 60)** |
| **FILED:** | **June 29, 2018** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**. | |

**I.**     **Background**

This case stems from the following business loans that plaintiff Transportation Alliance Bank, Inc. (TAB) extended to defendant Trax Air, LLC (Trax):

| Loan | Date | Principal Amount |
|---|---|---|
| Loan 1 | February 13, 2015 | $134,319.50 |
| Loan 2 | February 13, 2015 | $601,319.50 |
| Loan 3 | April 9, 2015 | $68,427.50 |

Docs. 1 at ¶¶ 8-9, 11; 1-1; 1-3; 1-7 (collectively, the Loans). Trax executed promissory notes in conjunction with each of the Loans. Docs. 1 at ¶¶ 8-9, 11; 1-2; 1-4; 1-8 (collectively, the Notes). The Loans and Notes (collectively, the Loan Agreements) state, in relevant part, that failure to make a scheduled payment constitutes default. Docs. 1 at ¶¶ 15-16; 1-1 at 4; 1-2 at 1; 1-3 at 4; 1-4 at 1; 1-7 at 4; 1-8 at 2. The Loan Agreements were backed by absolute and unconditional guarantees executed by defendants Brian L. Brewer, in his individual capacity, and The Bryan Brewer Revocable Trust (the Brewer Trust)[1] (collectively, the Guarantors). Docs. 1 at ¶ 13; 1-12; 1-13; 1-14; 1-15; 1-16; 1-17. The Loan Agreements were also secured by a commercial security agreement[2] executed by Trax and three aircraft security agreements executed by Trax and defendant Trax Aircraft, LLC (Trax Aircraft). Docs. 1 at ¶¶ 10, 12; 1-5 (the Commercial Security Agreement); 1-9 (the Piper Security Agreement); 1-10 (the Beechcraft Security Agreement); 1-11 (the Cessna Security Agreement).

As set forth in more detail in the undersigned's Report recommending the Court grant TAB's third motion for default judgment, Trax breached the Loan Agreements in 2015 by failing to make the required monthly payments. *See* Doc. 57. Thereafter, the parties attempted to rectify the defaults by entering into two separate agreements. First, TAB and the Brewer Trust entered into a pledge agreement (Doc. 1-21, the Pledge Agreement), in which the Brewer Trust pledged 100% of its equity interest in Trax as security for the prompt payment and performance of Trax's secured obligations to TAB. Second, TAB, Trax, and the Guarantors entered into an agreement (Doc. 1-20, the Forbearance Agreement), in which Trax agreed to perform certain obligations, such as making scheduled payments, in exchange for TAB forbearing from exercising its rights

---

[1] The Brewer Trust is the sole member of Trax.

[2] The commercial security agreement only secures Loan 2.

and remedies under the Loan Agreements. Trax breached the Forbearance Agreement by, among other things, failing to make scheduled payments, and the Brewer Trust defaulted on the Pledge Agreement, so TAB elected to terminate the Forbearance Agreement.

In October 2016, TAB filed the Complaint against Trax, Mr. Brewer, in his individual capacity, and Mr. Brewer and Katherine A. Brewer (collectively, the Brewers) in their capacities as trustees of the Brewer Trust (collectively, Defendants) in relation to defaulted Loan Agreements. Doc. 1.[3] TAB asserted the following claims against Defendants: Count I – breach of contract for the amounts due under the Loan Agreements and related guarantees; Count II – foreclosure of the security interests; and, Count III – fees and expenses for enforcement of the Piper and Beechcraft Security Agreements. *Id*. at 17-19. TAB requested various forms of relief, including, but not limited to, an award of damages resulting from the breach of the Loan Agreements. *Id*. at 19-21.

Trax was served on October 20, 2016. Doc. 21. The Brewers and the Brewer Trust were served on January 24, 2017. Docs. 31; 32; 33. Defendants did not timely respond to the Complaint. Thus, TAB moved for default against Defendants, and the Clerk entered default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). Docs. 25; 37; 38; 39; 40.

However, during that time, the Court entered three Orders to Show Cause against TAB. TAB was subject to its first Order to Show Cause for its failure to comply with the Court's Orders directing counsel to review and certify compliance with Local Rule 1.04(d) by filing a Notice of Pendency of Other Actions, and to file a Certificate of Interested Persons and Corporate Disclosure Statement. Doc. 16. Upon compliance, the Court discharged the Order to Show Cause. Doc. 24.

---

[3] TAB also named Trax Aircraft as a defendant, but TAB voluntarily dismissed Trax Aircraft in January 2018. Docs. 53; 56.

TAB was subject to another Order to Show Cause when it failed to serve Defendants Bryan Brewer and Katherine Brewer within the 90 days allowed by Federal Rule of Civil Procedure 4(m), and TAB had not otherwise moved for an extension of time pursuant to Rule 4(m).  Doc. 27.  Thereafter, TAB filed an untimely motion to extend the Rule 4(m) deadline, which the Court nonetheless granted.  Doc. 35.  Then, TAB was subject to a third Order to Show Cause, this Order requiring TAB to show cause in writing "why this action should not be dismissed for want of prosecution pursuant to Local Rule 1.07(b) and Rule 55(b), Fed.R.Civ.P. for failing to proceed without delay to apply for a judgment as to" Defendants.  Doc. 41.  That Order to Show Cause was discharged upon receipt of TAB's response, and TAB was given a deadline for the filing of a motion for default judgment.  Doc. 43.

On June 23, 2018, TAB filed its first motion for default judgment.  Doc. 44.  The Court denied that motion "because: 1) it is unclear whether the Court has subject matter jurisdiction over this case; 2) the Motion does not comply with Local Rule 3.01(a); and 3) it is unclear whether TAB is entitled to the relief it seeks."  Doc. 45 at 5.  In particular, the Court explained that:

> A renewed motion for default judgment must contain a memorandum of legal authority addressing choice of law, the elements of TAB's claim for breach of contract, and an explanation about how the well-pled allegations and evidence demonstrate that Defendants breached each agreement at issue. The failure to include a legal memorandum will result in the renewed motion for default judgment being denied.

*Id*. at 8.

On January 12, 2018, TAB filed its second motion for default judgment.  Doc. 49.  The Court denied TAB's motion, quoting the aforementioned language and finding that TAB failed to comply with the Court's previous order because TAB again failed to provide a memorandum of law that addressed the elements of the causes of action for which TAB sought relief – specifically the Utah state law claims.  Doc. 54.

On February 1, 2018, TAB filed its third motion for default judgment. Doc. 55. Particularly relevant to this Report, that third motion for default judgment also contained a request for attorney fees and costs. Doc. 55-1 at 13. In a Report, the undersigned recommended that the Court enter judgment in favor of TAB in the amount of $851,760.95 (plus interest). Doc. 57 at 14-15. In relation to TAB's request for attorney fees and costs, the undersigned found as follows:

> The Loan Agreements and related guarantees each state that TAB is entitled to recover its reasonable attorney fees, costs, and expenses in connection with the enforcement of the financial instruments at issue. Docs. 1-1 at 5; 1-2 at 2; 1-3 at 4; 1-4 at 2; 1-7 at 5; 1-8 at 2; 1-12 at 2-3; 1-13 at 2-3; 1-14 at 2-3; 1-15 at 2-3; 1-16 at 2-3; 1-17 at 2-3. Thus, the undersigned finds that TAB is entitled to an award of its reasonable attorney fees, costs, and expenses in connection with brining this case.
>
> TAB also seeks an award of attorney fees, costs, and expenses in connection with enforcing and executing the judgment rendered by the Court. *See* Doc. 55-1 at 18. TAB, however, does not provide any convincing argument that it is entitled to such relief. *See id.* at 13. Further, assuming TAB were entitled to such relief, it is unclear how the Court would determine whether the attorney fees, costs, and expenses incurred in connection with enforcing and executing the judgment were reasonable. Thus, in light of these issues, the undersigned finds that the Court should deny TAB's request for such attorney fees, costs, and expenses without prejudice.

Doc. 57 at 13. Thus, TAB was cautioned that the briefing it provided to the Court within the third motion for default judgment concerning TAB's quantification of its attorney fees request was insufficient, and the undersigned recommended that TAB's request for attorney fees and costs be denied without prejudice. Nonetheless, the undersigned recommended that the Court find that TAB "is entitled to its reasonable attorney fees, costs, and expenses incurred in bringing this case, and direct[ TAB] to file a motion quantifying those fees, costs, and expenses within 14 days of the Court's order on this Report." *Id.* at 15. No objection was made to the undersigned's Report and, on June 15, 2018, the Court adopted the Report and Recommendations; Default Judgment was then entered. Docs. 58; 59.

On June 29, 2018, TAB filed a timely Motion to Establish Amount of Attorneys' Fees, Costs and Expenses Due. Doc. 60 (the Motion). In the Motion, TAB seeks attorney fees in the amount of $93,386.25 and costs and expenses in the amount of $2,481.46. *Id.* Specifically, TAB seeks to recover the following attorney fees:

|  | Years of Practice | Rate | Hours[4] | Proposed Lodestar[5] |
|---|---|---|---|---|
| Richard Aguilar | 30+ | $395 | 83 | $32,686.25 |
| Manuel Farach | 30+ | $395 | 3.25 | $1,283.75 |
| Lisa Schiller | 20-30 | $375 | 75.50 | $28,312.50 |
| Terry Freeman | 20-30 | $395 | 18.50 | $7,307.50 |
| Ralph Confreda | 5-10 | $295 | 4.50 | $1,327.50 |
| Mark J. Chaney | Less than 5 | $275 | 71.00 | $19,525.00 |
|  |  | $295 | 0.75 | $73.75 |
| Dustin Alonzo | Less than 5 | $275 | 3.50 | $962.50 |
|  |  |  |  |  |
|  |  | Totals: | 259.75 | $91,725.00 |

---

[4] Pursuant to the billing records submitted to the Court, the undersigned identified 83 hours billed by Mr. Chaney, not 82.75 hours as asserted in the Motion. *See* Docs. 60-3; 63 at 13. There is no indication that any attorney's time was reduced though the exercise of billing judgment, so the undersigned assumes this was a typographical error. Further, the undersigned could find only one entry with Mr. Chaney's rate being listed as $295, and that listing was .075 hours in May 2018. *See* Docs. 60-1 at 12; *See* Doc. 60-3 at 111.

[5] According to the Motion, the Proposed Lodestar is $93,386.25, but that does not correspond with the proposed hours and rates provided to the Court. Instead, the proposed lodestar, based upon the proposed rates and proposed hours submitted to the Court in the billing records is $91,725.00. *See* Doc. 60-3. The Court must assume that the proposed lodestar was another typographical error or a mathematical error by TAB.

In support, TAB attached to the Motion an affidavit of Mr. Chaney (Doc. 60-2), an associate who worked on this case, and copies of the redacted billings records (Doc. 60-3), as well as the agreements establishing TAB's entitlement to attorney fees (Docs. 60-4 through 60-8). TAB also submitted unredacted copies of the billing records to the Court. TAB did not submit an affidavit from an expert concerning the reasonableness of the rates charged and hours billed, and there is no indication that TAB made any reductions to the hours billed prior to submitting this request to the Court. Finally, the undersigned notes that TAB's counsel billed in quarter-hour increments, so that the least amount of time billed on any one task is 0.25 hours. *See* Doc. 60-3.

## II. Discussion

### a. Entitlement to Attorney Fees

As the Court has already found, Loan Agreements, the Commercial Security Agreement, and the Guarantees provide that TAB is entitled to its reasonable attorney fees incurred in attempting to collect on those agreements. *See* Docs. 57; 58. Further, the undersigned notes that the agreements at issue contain broad contractual language that allows TAB to collect "all of [TAB's] costs and expenses . . . incurred in connection with the enforcement of" the agreements "whether or not there is a lawsuit." *See, e.g.*, Docs. 60-1 at 9-10; 60-4 through 60-8.

### b. Reasonableness of Requested Attorney Fee

"Where the right to attorneys' fees and costs sounds in state law and reaches this Court by way of federal diversity jurisdiction, [the court applies] the substantive law of the forum state." *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 801 (11th Cir. 2014) (citing *Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002)); *see also Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir. 1993) (discussing attorney fee provisions in mortgages and notes and stating that

"[i]n determining the fees to which the payees are entitled, we look to the law of the state in which the security instruments were executed."). The agreements provide that they are governed by Utah law. *See* Docs. 60-1 at 10; 60-4 through 60-8. Thus, the undersigned will apply Utah law in addressing Plaintiff's attorney fee request.

Utah has adopted the federal lodestar method for calculating reasonable attorney fees. *See e.g.*, *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 92, 372 P.3d 629, 662 (Utah 2016) ("The lodestar method is the traditional approach to calculating attorney fees."). The "lodestar" method entails multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "If evidence is inadequate, a court in its discretion may reduce an award, make the award on its own experience without further filings or an evidentiary hearing, or exclude unsupported requests. *Proescher v. Sec. Collection Agency*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3432737, at *10–11 (M.D. Fla. June 8, 2018), *report and recommendation adopted sub nom.*, No. 3:17-CV-1052-J-32PDB, 2018 WL 3428157 (M.D. Fla. July 16, 2018) (internal citations and quotations omitted). "The court's order ... must allow meaningful review−the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman*, 836 F.2d at 1304. "If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *Id*. at 1303.

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted).

In determining if the requested rate is reasonable, the Court may consider the applicable *Johnson* factors and may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quotations and citation omitted); *see Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[6] "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates. *Id*.

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the

---

[6] The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Eleventh Circuit has subsequently explained that "district courts may, but are not required to, consider [the *Johnson*] factors since many 'usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 801 (11th Cir. 2012) (quoting *ADA v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006)).

time claimed for each activity." *Norman*, 836 F.2d at 1303. "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted). But in cases where the fee motion and supporting documents are voluminous, an hour-by-hour analysis by the court is not required, and the court may apply across-the-board percentage cuts in the number of hours so long as the court provides a concise but clear explanation of its reasons for the reduction. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

   i.  *Reasonable Hourly Rates*

Here, TAB seeks to recover attorney fees for seven attorneys, with rates varying from $375 to $395 for senior attorneys or partners and $275 to $295 for junior attorneys or associates. In support of those hourly rates, TAB provided very little information. In particular, TAB provided the number of years' experience for each attorney and an additional sentence or two describing – very generally – the attorney's experience. For example, as to Mr. Aguilar, TAB proffered that Mr. Aguilar:

> is a 1986 graduate of the Louisiana State University Paul M. Hebert Law Center and is the managing member of McGlinchey Stafford's New Orleans office. Aguilar is a member of the Louisiana bar and admitted to practice in all federal district and bankruptcy courts in the State of Louisiana as well as being admitted to practice before the United States Court of Appeal for the Fifth Circuit. Aguilar has over 30 years of experience in representing banks and other companies in commercial litigation and bankruptcy matters. Aguilar has extensive experience with complex commercial loans and specialized collateral.

Doc. 60-1 at 13. TAB proffered that Ms. Schiller:

> is a 1993 graduate of the St. Thomas University School of Law. Schiller is a member of the Florida bar. Schiller became a member in the commercial litigation section of McGlinchey Stafford's Fort Lauderdale office in 2015. Schiller has

> extensive experience in the fields of bankruptcy, creditors' rights, commercial workouts and foreclosure disputes and has been recognized for her work by *Chambers USA*, *The Best Lawyers In America*, and *Florida Super Lawyers*.

*Id.* Even less information was provided concerning the junior attorneys, with TAB stating that Mr. Chaney:

> is a 2014 graduate of the University of Arkansas School of Law. Chaney is a member of the Louisiana bar and admitted to practice in all federal district and bankruptcy courts in the State of Louisiana as well as being admitted to practice before the United States Court of Appeal for the Fifth Circuit. He is an associate in the commercial litigation section of McGlinchey Stafford's New Orleans office with experience in representing banks and other companies in commercial litigation matters.

Doc. 60-1 at 15. As to Mr. Alonzo, TAB merely explained that Mr. Alonzo:

> is a 2014 graduate of the Loyola University New Orleans School of Law. Alonzo is a member of the Louisiana bar. He is an associate in the consumer financial services compliance and litigation and business banking sections of McGlinchey Stafford in McGlinchey Stafford's New Orleans office.

*Id.* No other information concerning counsel, and no expert opinion, was provided justifying the requested rates.

Instead, TAB relied upon a conclusory argument concerning "the complexities of the loan relationships at issue" to justify the rates charged. Doc. 60-1 at 16-17. In particular, TAB argued that the rates requested were "squarely within the rage [sic.] of rates approved by the 11th Circuit and regularly approved by this Court in matters of complexity similar to that posed by the Loans and the related litigation . . . ." *Id.* at 16. This argument was followed by a string citation to several cases, many of which bear little resemblance to this case, despite TAB's assertion to the contrary. The first case cited as one of "similar complexity" was *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993). TAB erroneously identified the case as an Eleventh Circuit case in its citation, but, regardless, the case bears little resemblance to this one, and was described by the court as "the largest consumer class action considered by this Court, and, quite probably, the

largest contemplated by the federal judicial system." *Id*. at 304.  This case does not even approach the complexity of that case.  Other of the cases involved attorney fee requests related to discrete discovery sanctions, copyright cases, insurance disputes, and a Title VII discrimination trial and, as a general matter, provided little guidance to the Court in the determination of counsel's rates in this case.  The case cited by TAB most on point from this District, *HCDL Holdings, LLC v. TKCT Milford, LLC*, No. 6:17-CV-62-ORL-40TBS, 2017 WL 4481635, at *4 (M.D. Fla. Sept. 21, 2017), *report and recommendation adopted*, No. 6:17-CV-62-ORL-40TBS, 2017 WL 4476851 (M.D. Fla. Oct. 6, 2017), involved default judgment concerning a breach of a credit agreement and resulted in an award of attorney fees at a rate of $400 per hour for a single attorney, whom the undersigned must assume was the lead counsel on the case.

In addition, TAB directed the Court to a recent case involving an award of attorney fees to Mr. Aguilar and Mr. Chaney.  *M C Bank & Tr. Co. v. Suard Barge Serv., Inc.*, No. CV 16-14311, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017).  In *M C Bank*, Mr. Aguilar requested a rate of $395 per hour and Mr. Chaney requested a rate of $225 per hour; the court found those rates reasonable.  Id. at *2.  According to TAB, that was a "similar complex commercial litigation matter[] with specialized collateral."  Doc. 60-1 at 17.

In addition, in considering the appropriate hourly rates for counsel, the undersigned has also looked to other, similar cases within this District.  *See, e.g.*, *First Home Bank v. Millinennium Transportation, Inc., et al.*, No. 8:17-CV-2428-T-27MAP, 2018 WL 3761052, at *2 (M.D. Fla. June 14, 2018) (authorizing hourly rates of $250 to $350 for attorneys in a case involving a default judgment on a note containing a similar attorney fee provision); *Diamond Resorts U.S. Collection Dev., LLC v. Gutierrez*, No. 6:16-CV-1695-ORL-41DCI, 2017 WL 6939208, at *4 (M.D. Fla. Dec. 8, 2017), *report and recommendation adopted*, No. 6:16-CV-1695-ORL-41DCI, 2018 WL 378688

(M.D. Fla. Jan. 11, 2018) (authorizing hourly rates of $250 to $450 for attorneys in a case involving a default judgment on a note, where the movant provided the Court with significant evidence, including an expert opinion); *Regions Bank v. Campus Developmental Research Sch., Inc.*, No. 6:15-CV-1332-ORL-DAB, 2016 WL 5946900, at *5 (M.D. Fla. Aug. 8, 2016), *report and recommendation adopted sub nom.*, No. 6:15-CV-1332-ORL-41DAB, 2016 WL 5933409 (M.D. Fla. Oct. 12, 2016) (authorizing hourly rates of $164.50 to $346.50 for attorneys in a case involving a collection action on default); *Branch Banking & Tr. Co. v. Chalifoux Bus. Park, L.L.C.*, No. 6:15-CV-2005-ORL-31TBS, 2016 WL 1238746, at *4 (M.D. Fla. Mar. 10, 2016), *report and recommendation adopted*, No. 6:15-CV-2005-ORL-31TBS, 2016 WL 1242552 (M.D. Fla. Mar. 29, 2016) (authorizing hourly rates of $188 to $340 for attorneys in a case involving a default judgment in commercial loan litigation).

Based upon the foregoing, and drawing upon the undersigned's own expertise and experience in these matters, the undersigned finds that the following hourly rates are reasonable in this case:

|  | Years of Practice | Rate |
|---|---|---|
| Richard Aguilar | 30+ | $395 |
| Manuel Farach | 30+ | $395 |
| Lisa Schiller | 20-30 | $350 |
| Terry Freeman | 20-30 | $350 |
| Ralph Confreda | 5-10 | $250 |
| Mark J. Chaney | Less than 5 | $225 |
| Dustin Alonzo | Less than 5 | $225 |

In making this determination, the undersigned first notes that the request is both unopposed by Defendants and unsupported by TAB. That said, it is TAB's burden to establish that the hourly rates and hours expended are reasonable. *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). But TAB provided the Court with almost no information supporting the requested rates. Thus, the undersigned has considered the applicable *Johnson* factors and relied on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303. The undersigned has also been informed by *M C Bank* – in which, less than a year ago, Mr. Aguilar was awarded $395 per hour and Mr. Chaney was awarded $225 per hour in a case of similar complexity – as well as other cases within this District involving similar factual and procedural underpinnings. Further, this case does not seem to present particularly novel or difficult questions, did not appear to preclude other employment by counsel, did not have onerous time limitations, and does not appear to be particularly undesirable. *See Johnson*, 488 F.2d at 717-19. Accordingly, for those reasons, and considering the lack of opposition, the undersigned finds the foregoing rates reasonable in this case.

      ii.     *Reasonable Number of Hours Billed*

In the Motion, Plaintiff seeks recovery for a total of 259.75 hours of work by seven attorneys. To establish the reasonableness of the hours billed, Plaintiff relies entirely upon the affidavit of Mr. Chaney and a brief discussion of the steps involved in attempting to collect on the various agreements at issue. *See* Docs. 60-1 at 18-19; 60-2. In particular, TAB argues that the number of hours was justified due to counsel's extensive efforts "over a period of more than 2.5 years" to collect on the Loans and preserve TAB's rights under the agreements and to the collateral. *Id*. TAB attached to its request redacted billing records for this case and submitted unredacted billing records to the Court in camera. Doc. 60-3.

The undersigned has reviewed the billing records and finds that Plaintiff has failed to demonstrate that many of the hours billed are reasonable; some, but not all, of the hours billed were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In particular, as noted at the outset of this Report, TAB unnecessarily extended these proceedings by the manner in which it litigated this case. TAB did so first by being the recipient of three orders to show cause, each of which required a written response in some form, as well as additional action on the part of TAB. *See* Docs. 16; 27; 41. "Courts in this District routinely decline to award fees for time spent responding to an order to show cause." *Dallas Buyers Club, LLC v. Brennan*, No. 6:14-CV-1011-ORL-37GJK, 2015 WL 12778344, at *8 (M.D. Fla. May 26, 2015), *report and recommendation adopted*, No. 6:14-CV-1011-ORL-37GJK, 2015 WL 12672125 (M.D. Fla. June 18, 2015). TAB also unnecessarily extended these proceedings because, prior to granting TAB's third motion for default judgment, the Court twice denied TAB's motions seeking default judgment, primarily because those motions failed to contain a sufficient memorandum of law in violation of the Local Rules of this Court. *See* Docs. 45; 54. In the context of a contractual fee-shifting provision, the undersigned cannot recommend that Defendants bear the full burden of attorney fees associated with additional, unnecessary litigation caused solely by the manner in which Plaintiff litigated this case. Further, in the Report recommending that the third motion for default judgment be granted, the undersigned denied TAB's request for attorney fees without prejudice. Doc. 57 at 13.

In addition, while TAB may retain several attorneys and expend resources to litigate this case in whatever way it chooses, the sum of that expense may not always be shifted over to opposing counsel in the context of a contractual fee-shifting provision. *See Hensley*, 461 U.S. at 434 (stating that counsel should make a good faith effort to exclude from a fee request hours that are "excessive, redundant, or otherwise unnecessary"). The Court must award a reasonable

expense, not necessarily the actual expense. *See id*. ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'"); *Barnes*, 168 F.3d at 428 ("If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary."). Here, TAB attached to the Motion redacted invoices that are wholly unusable by the Court in conducting a reasonableness analysis, and contain only vague words such as "receipt," "analyze," "conference," "consider," "review," and "confer." *See* Doc. 60-3. But TAB also provided these billing records to the Court in camera in an unredacted format. A review of these records in camera reveals a significant amount of duplication of work amongst a seven-attorney team working on this case. There are many entries of billed time involving attorneys conferring with each other, emailing each other, and reviewing one another's work and correspondence. While such interactions are certainly permissible, and some of those costs may be shifted pursuant to a provision such as that here, TAB has not carried its burden to explain sufficiently why *all* the costs associated with operating a seven-attorney team should be shifted to Defendants as "reasonable" costs in this context. Further, the undersigned also has some concern that the minimum billing increment in the billing records was .25 hours, or 15 minutes; such that every billed task in the hundreds of entries at issue resulted in, at a minimum, a 15-minute billing entry.

    Considering the foregoing, the undersigned finds that a 10% across-the-board reduction of the hours billed is appropriate in this case. That reduction will account for the time related to complying with the Court's orders to show cause, time related to filings that failed to comply with this Court's Local Rules, the unnecessary duplication of work related to the use of seven attorneys in this matter, the use of .25-hour billing increments, and the lack of any indication that counsel

utilized billing judgment prior to submitting this request to the Court. *See Game Craft, LLC v. Vector Putting, LLC*, No. 6:14-CV-243-ORL-28KRS, 2016 WL 7644788, at *4 (M.D. Fla. Nov. 22, 2016), *report and recommendation adopted*, No. 6:14-CV-243-ORL-41KRS, 2017 WL 36368 (M.D. Fla. Jan. 4, 2017) (finding an across-the-board reduction warranted, in part, where there was no indication that counsel exercised billing judgment) (citing *Hepsen v. J.C. Christensen & Assocs.*, 394 Fed. Appx. 597, 600–01 (11th Cir. 2010) (affirming an across-the-board reduction based, in part, on vague time entries)); *Regions Bank v. Campus Developmental Research Sch., Inc.*, No. 6:15-CV-1332-ORL-41DAB, 2016 WL 5946900, at *5 (M.D. Fla. Aug. 8, 2016), *report and recommendation adopted sub nom.* No. 6:15-CV-1332-ORL-41DAB, 2016 WL 5933409 (M.D. Fla. Oct. 12, 2016) (finding an across the board reduction warranted, in part, because "the use of four attorneys likely resulted in some degree of duplication of duties"). Ultimately, it is TAB's burden to establish that the hours expended are reasonable. *See Norman*, 836 F.2d at 1303. And while the undersigned finds that 90% of the hours billed are reasonable, the undersigned finds that TAB has not carried its burden entirely, and that the 10% reduction set forth above would result in a reasonable award.

Accordingly, based upon the rates and the hours the undersigned finds are reasonable, the undersigned respectfully recommends that TAB be awarded attorney fees as follows:

|  | Years of Practice | Rate | Hours | Recommended Lodestar |
|---|---|---|---|---|
| Richard Aguilar | 30+ | $395 | 74.7 | $29,506.50 |
| Manuel Farach | 30+ | $395 | 2.925 | $1,155.38 |
| Lisa Schiller | 20-30 | $350 | 67.95 | $23,782.50 |
| Terry Freeman | 20-30 | $350 | 16.65 | $5,827.50 |
| Ralph Confreda | 5-10 | $250 | 4.05 | $1,012.50 |

| Mark J. Chaney | Less than 5 | $225 | 64.575 | $14,529.38 |
| Dustin Alonzo | Less than 5 | $225 | 3.15 | $708.75 |
| | | | Total: | $76,522.51 |

### III. Costs

In addition to attorney fees, TAB seeks reimbursement of $2,481.46 in costs and expenses. Doc. 60-1 at 12. The Motion, however contains no memorandum of law in relation to this request for costs, in violation of Local Rule 3.01(a). Indeed, TAB fails entirely to even explain what these costs are, other than to mention the total amount. At most, TAB cites to the billing records, some of which contain vague descriptions of expenses billed from counsel to TAB, including Federal Express charges, postage, *pro hac vice* fees, and courier charges. With no explanation concerning the costs at issue, the undersigned has nonetheless reviewed the billing records and can discern that the following costs are properly recoverable in this action based on the evidence submitted: the filing fee ($400) and service costs as to Bryan Brewer ($123). The other invoiced amounts, with no explanation or supporting documents from TAB, are too vague for the undersigned to determine whether they are properly taxable to Defendants in this case pursuant to the provisions of the loan agreements at issue.

### IV. Conclusion

Accordingly, the undersigned respectfully **RECOMMENDS** that:

1. The Motion (Doc. 60) be **GRANTED in part** to the extent that the Court award Plaintiff a total of **$76,522.51** in attorney fees and **$523.00** in costs against Defendants;

2. The Motion (Doc. 60) otherwise be **DENIED**.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 10, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy